[No. A134179. First Dist., Div. Four. Aug. 23, 2012.]

EDWIN E. LICKISS, Plaintiff and Appellant, v.
FINANCIAL INDUSTRY REGULATORY AUTHORITY, Defendant and
Respondent.

1126

COUNSEL

Law Office of Jeffrey S. Salisbury and Jeffrey S. Salisbury for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Ethan D. Dettmer and Rachel A. Flipse for Defendant and Respondent.

OPINION

**REARDON, J.**—Appellant Edwin E. "Mike" Lickiss filed a petition in state court seeking to expunge his public securities brokerage records held within the central registration depository (CRD) database maintained by respondent Financial Industry Regulatory Authority (FINRA). In that petition Lickiss cited the court's jurisdiction under FINRA rule 2080(a) (rule 2080),[1] as well

---

[1] Rule 2080 reads in relevant part: "(a) Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief. [¶] (b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents unless this requirement is waived pursuant to subparagraph (1) or (2) below. [¶] (1) Upon request, FINRA may waive the obligation to name FINRA as a party if FINRA determines that the expungement relief is based on affirmative judicial or arbitral

as the court's equitable and inherent power to effect expungements. Sustaining FINRA's demurrer without leave to amend and dismissing the matter, the trial court adopted the standard set forth in rule 2080(b)(1) to evaluate the petition and concluded Lickiss did not and could not plead any basis for relief under that rule.

By adopting the narrow legal criteria of rule 2080(b) as the tool for evaluating Lickiss's pleadings, to the exclusion of any consideration of equitable principles, the court failed to rule on Lickiss's claim for equitable relief. Although imperfect, that claim was not fatally uncertain. Accordingly, we reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

### A. *FINRA*

FINRA[2] is a " 'self-regulatory organization' " as defined in the Securities Exchange Act of 1934 that oversees the conduct of securities brokers and brokerage firms. (15 U.S.C. §§ 78c(a)(26), 78s(b); *Sacks v. S.E.C., supra,* 648 F.3d at p. 948.) "It is 'responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation . . . .' [Citation.]" (648 F.3d at p. 948.)

One of FINRA's duties under the Securities Exchange Act of 1934 is to "establish and maintain a system for collecting and retaining registration information," including "information reported in connection with the registration or licensing of brokers and dealers and their associated persons, including disciplinary actions, regulatory, judicial and arbitration proceedings . . . ." (15 U.S.C. § 78o-3(i)(1)(A) & (i)(5).) FINRA maintains these records in the electronic CRD database it developed in concert with the state security

findings that: [¶] (A) the claim, allegation or information is factually impossible or clearly erroneous; [¶] (B) the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or [¶] (C) the claim, allegation or information is false. [¶] (2) If the expungement relief is based on judicial or arbitral findings other than those described above, FINRA, in its sole discretion and under extraordinary circumstances, also may waive the obligation to name FINRA as a party if it determines that: [¶] (A) the expungement relief and accompanying findings on which it is based are meritorious; and [¶] (B) the expungement would have no material adverse effect on investor protection, the integrity of the CRD system or regulatory requirements." (Rule 2080(a), (b).)

[2] In 2007 the National Association of Securities Dealers, Inc. (NASD), and the member regulation, enforcement and arbitration operations of the New York Stock Exchange merged to form FINRA. (*Sacks v. S.E.C.* (9th Cir. 2011) 648 F.3d 945, 948, fn. 1.)

commissions. (See *Meyers v. National Assn. of Securities Dealers, Inc.* (E.D.Mich., Mar. 29, 1996, No. 95-CV-75077) 1996 WL 1742619, p. *1.) All broker-dealers registered with the Securities and Exchange Commission (SEC) must file their registration forms through the CRD system, along with the registration forms for their associated persons. (NASD Notice to Members 01-65—Request for Comment (Oct. 2001) p. 564.) These forms require reporting of administrative information on registered members as well as disclosure information, including information relating to customer complaints, arbitration claims and awards, and court filings by customers. (*Ibid.*)

FINRA has established "BrokerCheck," an online application through which the public may obtain information on the background, business practices and conduct of FINRA member firms and their representatives. Through BrokerCheck, FINRA releases to the public certain information maintained on the CRD, thereby enabling investors to make informed decisions about individuals and firms with which they may wish to conduct business. This data includes historic customer complaints and information about investment-related, consumer-initiated litigation or arbitration. (FINRA Reg. Notice 10-34, July 2010; Securities and Exchange Com., Release No. 34-62476, July 8, 2010.)

As part of its regulatory oversight function, FINRA is empowered to promulgate rules, which the SEC, in turn, must approve. (15 U.S.C. § 78s(b)(1).) Rule 2080 is one such rule, initially proposed under FINRA's predecessor, the NASD. After giving notice, receiving numerous comments and two amendments to the proposed rule, the SEC considered and approved it, finding that the rule was "designed to promote just and equitable principles of trade, and, in general, to protect investors and the public interest." (68 Fed.Reg. 74667-01, 74671 (Dec. 24, 2003).) Further, the rule allowed "fact finders and the NASD to consider all competing interests before directing or granting expungement of customer dispute information from the CRD." (*Ibid.*)

Noting that certain commenters asserted that the standards under which the regulatory body could waive participation in the court confirmation process should be applied to arbitrators through the Code of Arbitration Procedure and to NASD members seeking expungement, the SEC stated it agreed with NASD that the standards would be most effectively applied at the waiver juncture. Further, the SEC noted NASD's position on these matters, namely that "arbitrators will be aware of the standards that will be utilized with respect to the NASD's waiver of involvement, and, thus, arbitrators will indirectly consider them [when deciding an arbitration case] . . . . [Additionally,] the standards should not be applied to members directly, because federal and state courts are more than able to make the proper decisions with respect

to arbitration award confirmation." (68 Fed.Reg., *supra*, 74667-01, 74671.) As well, the SEC expressed its belief that "the potential involvement of the NASD at the court confirmation level will provide greater safeguards than simple application of the rule to members." (*Ibid.*) Finally, the SEC stated its view that "the proposal strikes the appropriate balance between permitting members and associated persons to remove information from the CRD system that holds no regulatory value, while at the same time preserving information on the CRD system that is valuable to investors and regulators." (*Id.* at 74672.)

## B. *Lickiss's BrokerCheck Report and Declaration*

The FINRA BrokerCheck report on Lickiss shows 17 past customer complaints, as well as a regulatory action, filed between 1991 through 1996. According to a summary of the arbitration claims and regulatory action Lickiss provided with his moving papers, the sale of stock in Commonwealth Equity Trust (CET) was specifically named in disclosures of 13 of the 17 customer complaints. Lickiss has declared that aside from the CET customer complaints, the only other blemish on his CRD report concerned one client settlement he made after the client sustained a loss on a promissory note sold to the client by Lickiss's partner. He agreed to reimburse the client for his loss under pressure—the client was believed to be on his deathbed. However, Lickiss did not contact his broker-dealer first, a violation of FINRA rules. The client later complained to FINRA.

In his moving declaration, Lickiss stated that he began selling CET stock to clients in 1987 and continued selling through the early part of 1991, during which time CET exhibited strong financial performance, under the prudent management of Jeff Berger, Sr. Lickiss stopped selling CET stock because he became concerned about its rising level of debt, which coincided with Berger, Sr.'s death, at which time the son, Berger, Jr., took over. Berger, Jr.'s company, B&B Property Investment (B&B), extracted $7.2 million in prepaid commissions from CET around 1990. This drained liquidity from CET and weakened its financial position as California entered a recession and experienced a declining commercial real estate market. CET's share price plummeted, its stock became illiquid and the company declared bankruptcy in 1993. Meanwhile, lawsuits against B&B were settled for approximately $1 million, and Berger, Jr., was ousted from the company.

Many of Lickiss's clients who invested in CET filed claims against him, their essence being "that the investments were unsuitable for the clients and [Lickiss] failed to disclose the risks of the stock to them."

According to Lickiss, in at least 12 of the 17 arbitration claims, clients were represented by Richard Sacks, a nonattorney who ran an "investor

recovery" service in the Bay Area in the mid-1990's. Prior to this career, Sacks was the subject of over $479,000 in securities regulatory fines and was eventually barred from the industry. Sacks's operating method was to affirmatively contact investors and incite them to sue Lickiss.

The issues surrounding Lickiss's sale of CET stock occurred more than 20 years ago, and the one regulatory matter against him resolved 15 years ago in 1997. Since then, his record has been clear, yet Lickiss attested that he suffers professional and financial hardship relating to the prior sale of CET stock because current and potential clients increasingly use the Internet to obtain his BrokerCheck history.

## C.  *Litigation*

Lickiss petitioned for expungement of his CRD records, asserting that the superior court had jurisdiction "pursuant to (1) FINRA Rule 2080(a); [and] (2) the Court's equitable and inherent powers to effectuate expungements." He stated that the petition was grounded "upon the facts that (1) the material requested to be expunged occurred anciently, i.e., 20 or more years ago, (2) Petitioner's regulatory record has long since been and remained clean, and (3) the material sought to be expunged was overwhelming[ly] caused by the failure of a single investment security which Petitioner brokered for nothing more than ordinary commissions and over which Petitioner had no control or influence." The petition was based on a memorandum of points and authorities and declarations of Lickiss and his attorney with annexed exhibits, including his BrokerCheck report, all of which were appended to and submitted with the pleading.

FINRA removed the action to federal court. Upon Lickiss's motion, the federal district court remanded the matter back to the state superior court, ruling that it did not have subject matter jurisdiction over the case because there is no statute, rule or regulation imposing a duty on FINRA to expunge. (*In the Matter of Lickiss* (N.D.Cal., June 22, 2011, No. C-11-1986 EMC) 2011 WL 2471022, pp. *1, *3.) In its unpublished order and decision, the court noted that "[i]mportantly, Rule 2080 does not provide any substantive standard for determining whether expungement is appropriate or required." (*Id.* at p. *2.) And again: "There is nothing in the Act, rules, or regulations that provide substantive criteria as to when expungement is appropriate. . . . [¶] While FINRA rule 2080 addresses expungement, it only sets forth procedures, not a substantive duty." (*Id.* at p. *4.)

Thereafter, FINRA demurred to the petition, arguing that the standards set forth in rule 2080(b)(1) should guide the court in adjudicating the demurrer, and Lickiss failed to present any evidence that would support a finding under

that rule. In other words, to survive demurrer, Lickiss would have to allege that the claims were factually impossible or clearly erroneous; that he was not involved in the complained-of conduct; or the claims were false.

Opposing the demurrer, Lickiss protested that the rule 2080(b)(1) requirements did not constitute a substantive test that must be met in order to obtain expungement; rather, they amounted to a procedural option enabling certain petitioners to avoid serving FINRA with notice. In its tentative ruling, the court found for Lickiss for the reasons stated in his opposition.

However, FINRA contested the ruling, insisting that the court should apply the rule 2080(b)(1) standards to test the petition and resolve the demurrer. The court indicated it vacillated on the issue and could have gone either way, but ultimately set aside the tentative ruling. The court stated it "adopt[ed] the standard set out in FINRA Rule 2080 and finds that the Petition does not state facts sufficient to constitute a cause of action because Petitioner Lickiss has failed to plead any basis which would entitle him to his requested relief of expungement under FINRA Rule 2080." This appeal followed.

## II.  DISCUSSION

### A.  *Standard of Review*

When reviewing the sufficiency of a complaint against a demurrer, we treat the demurrer as admitting all properly pleaded material facts, but do not assume the truth of deductions, contentions or legal conclusions. As well, we liberally construe the pleading in the interest of substantial justice between the parties, affording the complaint a reasonable interpretation and reading the allegations in context. (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 481 [104 Cal.Rptr.3d 545] (*Arce*).) Further, when the demurrer is sustained, we determine de novo if the factual allegations are sufficient to state a cause of action under any legal theory. (*Id.* at p. 482.)

Notwithstanding these well-established rules, FINRA contends that the standard of review is abuse of discretion. That test applies when we review the trial court's *exercise* of equitable powers and when the court relies on the doctrine of judicial abstention to refrain from adjudicating a suit seeking equitable remedies. (*Ho v. Hsieh* (2010) 181 Cal.App.4th 337, 345 [105 Cal.Rptr.3d 17]; *Arce, supra,* 181 Cal.App.4th at pp. 482, 496.) The trial court neither exercised its equitable powers nor invoked the doctrine of judicial abstention; rather, it sustained its demurrer without leave to amend upon applying the rule 2080(b)(1) standards to his petition.

## B. *The Trial Court Erred in Sustaining the Demurrer*

Lickiss maintains that the trial court erred in exclusively relying on rule 2080(b)(1) to delineate the determinants for evaluating the legal sufficiency of his expungement petition. Instead, the court should have turned to well-established principles of equity to evaluate the petition. FINRA counters that no other standard was offered; the rule 2080 standard articulates the SEC's balancing of interests at stake in the case; and in any event, the trial court did not abuse its discretion in applying those standards. Further, FINRA claims the petition fails for uncertainty.

Initially overruling FINRA's demurrer, the trial court changed its mind and embraced the very narrow rule 2080(b)(1) procedural criteria for waiving FINRA's participation in an expungement proceeding as the sole basis for pleading substantive entitlement to expungement. Since Lickiss did not plead any basis fitting those narrow criteria, the court sustained the demurrer, while also acknowledging that it could have gone either way.

Had Lickiss merely petitioned the court for expungement relief under rule 2080, without also invoking the court's equitable powers, that might be the end of the matter. However, Lickiss explicitly invoked those powers.

## C. *Guiding Principles*

■ Equity aims to do right and accomplish justice. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770 [110 Cal.Rptr.2d 861].) " 'Equity or chancery law has its origins in the necessity for exceptions to the application of rules of law in those cases where the law, by reason of its universality, would create injustice in the affairs of men.' [Citation.]" (*Ibid.*) Equity therefore will assert itself in situations where right and justice would be defeated but for its intervening. (*Ibid.*) The equitable powers of a court are not curbed by rigid rules of law, and thus wide play is reserved to the court's conscience in formulating its decrees. These powers are broad enough to address novel conditions and meet the requirements of every case. (*Id.* at pp. 770–771.) In other words, equity recognizes that we live in a changing world and equitable remedies are flexible, capable of expanding to meet the increasing complexities of these changing times. Inflexible rules are not permitted to curtail the power of equity to accomplish justice. (*Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1786 [18 Cal.Rptr.2d 574].)

■ Our Supreme Court reminds us that courts cannot properly exercise equitable powers without considering the equities on both sides of a dispute. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 180 [96 Cal.Rptr.2d 518, 999 P.2d 706].) This basic principle of equity jurisprudence means that in any given context in which the court is prevailed upon to

exercise its equitable powers, it should weigh the competing equities bearing on the issue at hand and then grant or deny relief based on the overall balance of these equities. (*Ibid.*)

■ Courts in various states have recognized the inherent equitable power to expunge public records. (See *State v. Schultz* (Minn.Ct.App. 2004) 676 N.W.2d 337, 340–341 [inherent power to expunge criminal records]; *State v. Davis* (1936) 123 Fla. 41 [166 So. 289, 295] [inherent power to expunge, in an appropriate case, certain legislative journal entries].) In *State v. Ambaye* (Minn. 2000) 616 N.W.2d 256, 261, the Minnesota Supreme Court has explained that expungement is proper where the benefits to the petitioner outweigh the disadvantages to the public and the burden on the court. Lickiss argues that the trial court should have applied a similar rule.

D. *Analysis*

In the case at hand, Lickiss petitioned for an order directing expungement of his customer complaints, arbitrations, litigations and enforcement actions held within the CRD system operated by FINRA. He cited the court's jurisdiction pursuant to rule 2080 and its inherent equitable powers to effect expungements. The petition recited facts pertinent to equitable relief, namely that the material requested to be expunged was ancient; his regulatory record has long since remained clean; and the material sought to be expunged was overwhelmingly caused by the failure of one investment security over which he had no control or influence. His appended declaration submitted with and referenced in the petition elaborated the factual basis upon which he petitioned for equitable relief, and the points and authorities explained that a court should evaluate a petition for expungement by balancing the individual's need for expungement against the need to protect the public interest.

FINRA argues that the court had discretion, as a court exercising its equitable powers, to determine the appropriate standard to decide the demurrer. From this it reasons that the court did not abuse its discretion in adopting rule 2080(b)(1) as the framework to decide the demurrer, and maintains that this rule was the only standard presented to the court. First, FINRA ignores that Lickiss did suggest an equitable standard, namely the balancing and weighing of benefits and burdens. Second, we disagree with FINRA's characterization of the court's action.

Sustaining the demurrer, the trial court never announced that it was donning its equitable hat. If, as FINRA suggests, the court believed that

equity permitted it to rely exclusively on rule 2080(b)(1) to resolve the demurrer, the court erred. The choice of a very narrow, rigid legal rule to assess the legal sufficiency of Lickiss's petition—a choice that closed off all avenues to the court's conscience in formulating a decree and disregarded basic principles of equity—was nothing short of an end run around equity. This is particularly so given that on its face rule 2080(b)(1) is a *procedural* rule that does not provide any substantive criteria as to when expungement would be appropriate. The SEC itself argued *against* applying the rule 2080 standards directly to NASD members, acknowledging that federal and state courts are better suited to make the right decision. (68 Fed.Reg. 74667-01, 74671.)

■ Further, if the court determined it could rule on the demurrer without addressing Lickiss's equitable claim it also erred because Lickiss has stated a valid cause of action. Interestingly, the trial court properly and preliminarily overruled FINRA's special demurrer on grounds of uncertainty, grounds that FINRA reasserts on appeal. So ruling, the trial court indicated that demurrers for uncertainty are disfavored, and are granted only if the pleading is so incomprehensible that a defendant cannot reasonably respond. We agree that demurrers for uncertainty are disfavored. We strictly construe such demurrers because ambiguities can reasonably be clarified under modern rules of discovery. (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 616 [17 Cal.Rptr.2d 708].)

■ On the other hand, we liberally construe the petition to achieve substantial justice between the parties. (*Arce, supra*, 181 Cal.App.4th at p. 481.) While we would have preferred a standard complaint with numbered paragraphs and a prayer for relief, Lickiss's petition, declarations and points and authority adequately plead a cause of action for expungement. This is not, as FINRA contends, merely a request for a remedy. ■ Rule 2080(a) essentially recognizes the *right* of members and associated persons to seek expungement of information from the CRD system by obtaining an order from a court of competent jurisdiction directing such expungement. ■ Lickiss's petition and declaration reference rule 2080(a) and the facts upon which the equitable remedy of expungement was sought. Lickiss proceeded to state court, took a detour to federal court, and then returned to state court in pursuit of the right to seek expungement. Exercising that right under a rule that provides no substantive criteria for delivering the remedy of expungement, Lickiss called upon the court's inherent equitable powers to weigh the equities favoring expungement against the detriment to the public should expungement be granted. This is enough to pass demurrer.

## III.  DISPOSITION

We reverse the order sustaining FINRA's demurrer without leave to amend and the ensuing dismissal, and remand for further proceedings consistent with this opinion.

Ruvolo, P. J., and Rivera, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 14, 2012, S205736.