Filed 12/6/21  McLeod v. BTIG CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MATTHEW McLEOD,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BTIG, LLC,<br><br>        Defendant and Appellant. | A159016<br><br>(San Francisco City & County Super. Ct. No. CGC-19-576499) |

BTIG, LLC (BTIG) appeals from an order denying its motion to compel arbitration as to three of the four causes of action alleged in a complaint filed by BTIG's former employee, respondent Matthew McLeod.  The three claims, which allege claims for retaliation, wrongful termination, and injunctive relief, are based on respondent's contention that BTIG retaliated against him for reporting acts of discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[1]  BTIG contends that respondent's claims must be submitted to arbitration even though the parties' arbitration agreement excludes claims that allege "employment discrimination . . . in violation of a statute."  The trial court concluded that the three claims are not arbitrable because they fall within this exclusion. We affirm.

---

[1] All undesignated statutory references are to the Government Code.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a global financial services firm that specializes in institutional trading, investment banking, research, and related brokerage services. It is a registered member of the Financial Industry Regulatory Authority (FINRA),[2] and is subject to regulations promulgated by FINRA. Pursuant to these FINRA regulations, BTIG requires all employees hired to perform regulated activities, such as investment banking services, to fill out and sign a "Uniform Application for Securities Industry Registration or Transfer Form," otherwise known as a "Form U-4."[3]

In November 2014, BTIG hired respondent as an investment banker. As a condition of his employment, he completed and signed a Form U-4. The form included a provision requiring him to consent to the following language: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules,

---

[2] "FINRA is the self-regulatory organization for securities brokers and brokerage firms and is the successor to the National Association of Securities Dealers, Inc. (NASD)." (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 834, fn. 1.) "FINRA is responsible for regulatory oversight of all securities brokers and firms that do business with the public; professional training, testing, and licensing of persons registered by FINRA; and arbitration and mediation of disputes." (*Ibid.*)

[3] On appeal, BTIG requests judicial notice of various FINRA regulations and related documents under Evidence Code section 452, subdivisions (b), (c), and (h). We deny the request with respect to materials described in paragraphs 1 through 3 because these materials were part of the record before the trial court and are included in the record on appeal. (*Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 632, fn. 11.) We deny the request with respect to exhibits 1 through 11 attached to BTIG's request for judicial notice because these materials were not presented to the trial court in the first instance. (Evid. Code, § 459, subd. (a).)

constitutions, or bylaws of the SROs[4] indicated in Section 4 (SRO REGISTRATON) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*." In section 4 of his Form U-4, respondent registered with FINRA.

According to respondent, during his tenure with BTIG "he witnessed blatant religious, racial and gender discrimination." For example, he observed a managing director making anti-Semitic comments regarding a key client of BTIG. That same manager also directed BTIG staff to screen out female and African-American job applicants. Respondent complained directly to BTIG executives about this discrimination, but the company reportedly "did not investigate, and instead reprimanded [respondent] for making things 'awkward.' Shortly thereafter, despite never having received a negative performance review or feedback, [respondent] was fired."

In June 2019, respondent filed a complaint against BTIG stating causes of action for retaliation in violation of the FEHA, wrongful termination in violation of public policy, injunctive relief, and unfair business practices. He alleged that in addition to being wrongfully terminated, BTIG submitted fraudulent information to FINRA resulting in a damaging designation on his publicly available FINRA profile.

BTIG filed a petition to compel FINRA arbitration and stay this lawsuit. BTIG asserted that by signing the Form U-4, respondent had agreed to arbitrate any controversy arising between him and BTIG involving his employment and its termination. Respondent filed an opposition contending

---

[4] "SRO" refers to a "self-regulatory organization" such as FINRA.

3

that his claims were exempt from arbitration. Alternatively, he argued that the parties' arbitration agreement was void as unconscionable.

In September 2019, the trial court rejected respondent's unconscionability argument and granted BTIG's petition to compel arbitration of his unfair business practices claim. The court denied the petition as to respondent's claims for retaliation and wrongful termination, concluding those claims were exempt from arbitration under FINRA's arbitration rules because the rules expressly exclude claims " 'alleging employment discrimination, including a sexual harassment claim, in violation of a statute.' " The court also denied the petition as to the claim for injunctive relief because that claim "is best characterized as part of [respondent's] FEHA retaliation claim." The court stayed the case pending completion of arbitration on the unfair business practices claim. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Here, the parties offered no conflicting extrinsic

4

evidence on the meaning of the arbitration provisions at issue. We therefore apply the de novo standard of review.

## B. Applicable Legal Principles

The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) applies to employee disputes with FINRA member firms. (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 633–634; see also *Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 613 (*Valentine Capital*).) "Courts interpret the FINRA arbitration rules the same way they interpret contracts, giving effect to the parties' intent as expressed by the plain and ordinary meaning of the language they used." (*Ronay Family Limited Partnership v. Tweed, supra*, 216 Cal.App.4th at pp. 841–842.) As BTIG correctly observes, federal and state public policy strongly favors arbitration and seeks to ensure that " 'private agreements to arbitrate are enforced according to their terms.' " (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 664; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) However, " ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744; accord, *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 855.) " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.' " (*AT&T Technologies, Inc. v. Communications Workers* (1986) 475 U.S. 643, 648; see also *Cohen*, at pp. 855, 857–858.)

The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, while the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement. (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239.) Doubts

5

regarding the validity of an arbitration agreement generally are resolved in favor of arbitration.  (*Valentine Capital*, *supra*, 174 Cal.App.4th at p. 613; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.)

## C.    Form U-4 Arbitration Clause

Respondent signed Form U-4, agreeing "to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or bylaws of the SROs . . . as may be amended from time to time . . . ."  FINRA's Code of Arbitration for Industries Disputes (FINRA Code) provides that "[*e*]*xcept* as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:  [¶] Members; [¶] Members and Associated Persons; or [¶] Associated Persons."  (FINRA Code, rule 13200(a).)  FINRA Code rule 13201(a) (Rule 13201(a)) carves out an exception to the arbitration of such claims.  It provides in relevant part:  "A claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code.  Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose."

The foregoing language is clear and unambiguous.  Under the FINRA provision quoted above, the parties agreed to arbitrate all disputes arising out of business activities between a FINRA member (BTIG) and an associated person (respondent), except for claims "alleging employment

6

discrimination . . . in violation of a statute."[5] Although the FINRA rules permit the arbitration of statutory employment discrimination claims if the parties privately agree to doing so, BTIG does not identify any such agreement between the parties here. Accordingly, the question presented in this appeal is whether the three causes of action for retaliation, wrongful termination, and injunctive relief allege claims of employment discrimination in violation of a statute. If they do, those claims cannot be arbitrated pursuant to the unambiguous terms of the parties' arbitration agreement.

## D.    Respondent's Claims

### i.  Retaliation

In the complaint's first cause of action, respondent alleges that he was terminated in retaliation for reporting unlawful discrimination on the basis of religion, sex, and race. To state a claim for retaliation under the FEHA, a plaintiff must show that "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) "The statutory language of section 12940[, subdivision] (h) indicates that protected conduct can take many forms. Specifically, section 12940[, subdivision] (h) makes it an unlawful employment practice '[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in

---

[5] As BTIG points out, California appellate courts have concluded that the phrase "business activities" encompasses employment disputes between FINRA members and employees who signed Form U-4. (See *Cione v. Foresters Equity Servs., Inc.*, *supra*, 58 Cal.App.4th at p. 645.) Respondent does not contend otherwise.

any proceeding under this part.'" (*Ibid.*, italics omitted.)  There is no disagreement that the complaint's allegations state a legally sufficient claim for retaliation under the FEHA.

What the parties dispute is whether retaliation constitutes an "employment discrimination" claim within the meaning of Rule 13201(a)'s exception to mandatory arbitration.  BTIG notes that respondent does not allege he was personally subject to any harassment or discrimination on the basis of a protected characteristic.  Rather, BTIG contends that retaliation is not an "employment discrimination" claim under the FEHA because it is a separate cause of action with different elements than discrimination.  BTIG is mistaken.

The statutory text of the FEHA makes clear that retaliation constitutes a form of employment discrimination.  Section 12940, subdivision (h) provides that it is an unlawful employment practice "[f]or any employer . . . to discharge, expel, *or otherwise discriminate* against any person *because the person has opposed any practices forbidden* under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  (Italics added).  The phrase "otherwise discriminate" clearly identifies retaliation as a form of discrimination barred by subdivision (h).  Title VII of the Civil Rights Act of 1964, on which the FEHA is modeled, also defines retaliation against an employee for opposing an unlawful practice as a form of discrimination.  Section 2000e-3 states in relevant part:  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."  (42 U.S.C. § 2000e-3.)  (See *Camargo v. California*

*Portland Cement Co.* (2001) 86 Cal.App.4th 995, 1006 ["FEHA has the same objectives as its federal counterpart and model, title VII of the federal Civil Rights Act"].) Relevant United States Supreme Court precedent confirms this understanding.

In *Jackson v. Birmingham Board of Education* (2005) 544 U.S. 167 (*Jackson*), the high court held that Title IX's anti-discrimination provision prohibited retaliation against a male public school teacher for having complained about sex discrimination in the high school's athletic program. The court explained: "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment. [Citations.] Moreover, retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." (*Jackson*, at pp. 173–174; accord, *Gomez-Perez v. Potter* (2008) 553 U.S. 474, 480–481 [extending reasoning in *Jackson* to hold that the statutory phase "discrimination based on age" in the Age Discrimination in Employment Act of 1967 encompasses claims of retaliation].)

California law is in accord. In *Yanowitz*, the California Supreme Court considered what type of employment actions are sufficiently adverse to support a cause of action for retaliation. The court acknowledged that the statutory language concerning discrimination under section 12940, subdivision (a), bore some differences than the language regarding retaliation

under subdivision (h).[6]  Nevertheless, the court rejected the plaintiff's argument that what constitutes as the scope of an "adverse employment action" should be read more broadly for retaliation claims than for discrimination claims.  The *Yanowitz* court explained:  "When the provisions of section 12940 are viewed as a whole, . . . we believe it is more reasonable to conclude that the Legislature intended to extend a comparable degree of protection both to employees who are subject to the types of basic forms of discrimination at which the FEHA is directed—that is, for example, discrimination on the basis of race or sex—and to employees who are *discriminated against in retaliation for opposing such discrimination,* rather than to interpret the statutory scheme as affording a greater degree of protection against improper retaliation than is afforded against direct discrimination."  (*Yanowitz*, *supra*, 36 Cal.4th at p. 1050, italics added; see also *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1240 (*Taylor*) [holding that "retaliation is a form of discrimination" under the FEHA]), disapproved on other grounds in *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173–1174 (*Jones*).

BTIG's reliance on *Jones* is misplaced.  In *Jones*, the California Supreme Court was asked to consider whether its holding in *Reno v. Baird* (1998) 18 Cal.4th 640 (*Reno*) should be extended to bar claims of retaliation against non-employer individuals.  In *Reno*, the court held that although employers may be held liable for discrimination under the FEHA, individuals working for the employer, including supervisors, are not personally liable for that discrimination.  The *Jones* court concluded that the same rule

---

[6] (Compare § 12940, subd (a) ["to discriminate against the person in compensation or in terms, conditions, or privileges of employment"] with § 12940, subd. (h) ["to discharge, expel, or otherwise discriminate"].)

announced in *Reno* should apply to claims of retaliation against individuals. (*Jones*, *supra*, 42 Cal.4th at p. 1160.) The court reasoned that imposing liability on individual supervisory employees would not enhance a plaintiff's recovery and would severely impair the exercise of supervisory judgment and place supervisors in direct conflict of interest with their employers. (*Id.* at pp. 1165–1167.)

BTIG contends that if retaliation were a form of discrimination, there would have been no reason for the *Jones* court to answer the question presented in that appeal. We disagree. *Jones* addressed the question of individual liability in a retaliation claim because such claim derives from a different subdivision of the FEHA. But the *Jones* court did not address, much less determine, that retaliation does not constitute a form of discrimination under the FEHA. On the contrary, *Jones* explained: "If, as we held in *Yanowitz*, the employment actions that can give rise to a claim for retaliation are *identical* to the actions that can give rise to a claim for discrimination, it is hard to conceive why the Legislature would impose individual liability for actions that are claimed to be retaliatory but not for the *same* actions that are claimed to be discriminatory." (*Jones*, *supra*, 42 Cal.4th at pp. 1168–1169.) As the *Jackson* and *Yanowitz* courts both recognized, retaliation is a form of discrimination because it subjects a complainant to differential treatment on the basis of his or her opposition to discriminatory acts committed by the employer. *Jones* did nothing to undermine this understanding of a retaliation claim.

Finally, BTIG asserts that the canon of *expressio unius est exclusio alterius* supports its argument that Rule 13210(a)'s exclusion does not apply to claims of retaliation. " ' "Under the familiar maxim of *expressio unius est exclusio alterius* it is well settled that, when a statute expresses certain

11

exceptions to a general rule, other exceptions are necessarily excluded.' "
[Citations.] This canon, based on common patterns of usage and drafting, is
equally applicable to the construction of contracts." (*White v. Western Title
Ins. Co.* (1985) 40 Cal.3d 870, 902.) BTIG argues that because Rule 13201(a)
"expressly mentions 'sexual harassment' as included in 'employment
discrimination,' but is silent as to retaliation, [this] is a strong indication that
retaliation does not fall within the Exclusion." We are not persuaded. The
reference to sexual harassment is clearly intended to serve as an example of
an employment discrimination claim not subject to arbitration under
FINRA's regulations, and not as a limitation on that term. By BTIG's logic,
an employee discriminated against on the basis of religion or race would also
be required to arbitrate their disputes because such categories were not
expressly cited in Rule 13201(a). BTIG provides no support for this
implausible construction. We conclude that respondent's retaliation claim is
a claim alleging employment discrimination in violation of a statute and is
therefore exempt from arbitration under Rule 13210(a).

### ii. *Wrongful Termination in Violation of Public Policy*

The complaint's second cause of action states a claim for wrongful
termination in violation of public policy. In his claim, respondent alleged
that he was fired because he had opposed, protested, and reported
discriminatory practices. He alleges that his termination was in violation of
public policy based on the California Constitution, article I, section 8, and the
FEHA. The trial court determined that this cause of action was exempt from
the obligation to arbitrate "because it too is a retaliation (or discrimination)
claim," observing that BTIG had conceded in its petition that the wrongful
termination claim was " 'entirely derivative of [respondent's] FEHA
retaliation claim.' " On appeal, BTIG contends wrongful termination is a

12

common law and not a statutory claim, and therefore is not exempt from arbitration under Rule 13201(a).

In *Tameny v. Atlantic Richfield Co.*, (1980) 27 Cal.3d 167 (*Tameny*), our Supreme Court held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Id.* at p. 170). BTIG argues that termination in violation of public policy is a common law claim that does not depend on violation of any statute to be asserted. (See *Palmer v. Regents of Univ. of California* (2003) 107 Cal.App.4th 899, 909 ["Because the 'classic *Tameny* cause of action' is a common law, judicially created tort . . . and not authorized by statute, it is not properly asserted against the Regents."]) Respondent answers that to support a tortious wrongful discharge claim, a fundamental public policy must be grounded in a constitutional or statutory provision. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 130.)

Even if, as a general matter, a cause of action for wrongful termination in violation of public policy arises from common law and need not depend on the violation of an express statutory provision, there is no dispute that in *this* action, respondent's wrongful termination claim is predicated entirely on a violation of the FEHA. Respondent's wrongful termination claim mirrors the allegations of his retaliation claim by asserting that his termination was an act of retaliation for "opposing, protesting, and reporting discriminatory practices" in violation of the FEHA. Indeed, in the absence of these statutory allegations, respondent would have no basis upon which to state a claim for wrongful termination. Accordingly, respondent's wrongful termination claim is "[a] claim alleging employment discrimination . . . in violation of a statute." (Rule 13201(a).)

In arguing to the contrary, BTIG relies on a Texas Supreme Court case, *In re NEXT Financial Group* (Tex. 2008) 271 S.W.3d 263 (*NEXT*) to assert that a claim for wrongful termination is not covered by Rule 13201(a), and that a retaliation claim is not an employment discrimination claim. In *NEXT*, the employee's wrongful discharge claim was predicated upon the employer having allegedly fired the securities broker for refusing to conceal a trader's fraudulent "churning" transactions. (*Next*, at p. 265.) The Texas Supreme Court found that the claim was subject to arbitration under the NASD Arbitration Code because, "although [the securities broker's] retaliatory discharge claim [was] premised on NEXT's allegedly illegal activities, the alleged conduct involve[d] 'significant aspects' of NEXT's legitimate business activities, bringing the dispute within the scope of the NASD arbitration clause." (*Next*, at p. 269.) The court further found that the employee's claim for retaliation did not fall within Rule 13201's exemption for employment discrimination claims because "[t]he plain language of the NASD Code confirms that Rule 13201 does not except *common law* discrimination claims." (*Next*, at p. 269.)

We find *NEXT* inapplicable. The employee in *NEXT* did not allege a statutory discrimination claim nor was such claim based on the violation of a discrimination statute. Rather, the plaintiff asserted a claim under Texas common law that permits an employee to sue if they are discharged for the *sole* reason that the employee refused to perform an illegal act. (See *Sabine Pilot Service, Inc. v. Hauck* (Tex. 1985) 687 S.W.2d 733, 735.) As the NEXT court explained, "We do not view a *Sabine Pilot* claim as a 'discrimination claim.'" (*NEXT*, *supra*, 271 S.W.3d at p. 270.) Unlike the employee in *NEXT,* respondent's cause of action here is based on allegations of *statutory* employment discrimination. As discussed above, retaliation that is in

14

response to an employee's opposition to discriminatory conduct by the employer is itself a form of employment discrimination under the FEHA.

### iii. Injunctive Relief

The complaint's third cause of action seeks injunctive relief based on BTIG's allegedly false report to FINRA that respondent was fired "because his performance did not meet expectations," when, "[i]n fact, he was fired in retaliation for having complained about unlawful activity."  BTIG argues that respondent's claim is not excluded from arbitration because it alleges defamation, not employment discrimination.

When a registered employee is terminated, FINRA regulations require the company to file a Uniform Termination Notice for Securities Industry Registration, Form U-5, which requires the company to state the basis of the registered employee's termination.  (*Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719, 725–726, disapproved on another ground in *Kibler v. Northern Inyo County Local Hospital District* (2006) 39 Cal.4th 192, 203, fn. 5.)  Federal law requires "that FINRA publish information about its members' 'disciplinary actions, regulatory . . . proceedings, and other information required by . . . exchange or association rule, and the source and status of such information.' [Citation.]  FINRA does this through BrokerCheck . . . , which allows members of the public to search for and review the professional history of individual brokers."  (*Flowers v. Financial Industry Regulatory Authority, Inc.* (2017) 16 Cal.App.5th 946, 950, italics omitted.)  Because the information supplied by BTIG is reflected on respondent's publicly available FINRA U-5 Form, respondent seeks an injunction ordering BTIG to direct FINRA to revise the Form U-5 "to state that his employment was not terminated due to performance."

15

The trial court concluded that respondent's prayer for injunctive relief was also exempt from arbitration. As the court correctly observed, " '[i]njunctive relief is a remedy and not, in itself, a cause of action" (*Shell Oil Company, Incorporated et al., v. Richter* (1942) 52 Cal.App.2d 164, 168 [injunctive relief is a remedy and a cause of action that must exist before injunctive relief may be granted].) The court reasoned that "[t]he request for injunctive relief is best characterized as part of [respondent's] FEHA retaliation claim," relying on *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 131–132, which held that an injunction can be a proper remedy both to provide redress for past instances of employment discrimination, as well as to prevent a recurrence of such misconduct.

At oral argument, counsel for BTIG asserted that respondent's claim for injunctive relief sounds in defamation, not retaliation, because the claim is primarily an allegation of injury to reputation. Counsel referred to his opening brief, in which he cited several federal district court decisions holding that allegations of misreporting on U-5 forms are arbitrable under the FINRA Code. These cases are distinguishable, however, because the plaintiffs filed *defamation* causes of action related to the U-5 forms, and did not join or allege any claims of employment discrimination or retaliation.

Here, the complaint specifically alleges that the information BTIG submitted to FINRA was false because "[i]n fact, he was fired *in retaliation* for having complained about unlawful activity." (Italics added.) Thus, the complaint asserts that BTIG's filing of a false U-5 form was an additional act of retaliation against respondent. We agree with the trial court that respondent's request for injunctive relief is properly understood as a request that a remedy be entered in response to BTIG's retaliation against him in violation of the FEHA. Entitlement to such relief will require respondent to

16

prove his retaliation claim. And because we have concluded that respondent's cause of action for retaliation is exempt from FINRA arbitration, so too is respondent's request for equitable relief.

In sum, the trial court properly denied BTIG's motion to compel FINRA arbitration of respondent's exempt claims for wrongful termination in violation of public policy, retaliation, and injunctive relief.

## E. Delegation of Arbitrability

On appeal, BTIG contends that the issue of arbitrability should not be decided by the courts, but should be delegated to an arbitrator. As respondent correctly observes, because BTIG asked the trial court to exercise its authority to determine the arbitrability of his claims, BTIG is estopped from advancing this contention on appeal under the doctrine of invited error. The purpose of the invited error doctrine is to "prevent a party from misleading the trial court and then profiting therefrom in the appellate court." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) "Under the doctrine of 'invited error' a party cannot successfully take advantage of error committed by the court at his request. . . . Nor can he challenge a finding of the trial court made at his instance." (*Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121.) If BTIG wanted arbitrability to be decided by an arbitrator rather than by the court, it should not have asked the court to rule on that issue. Even had BTIG not invited error, BTIG has forfeited this claim by failing to raise it before the trial court in the first instance. (See *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 ["Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived."].) In light of our conclusions, we need not address the parties' remaining arguments.

17

### III. DISPOSITION

The order denying BTIG's motion to compel arbitration is affirmed. Respondent shall recover his costs on appeal.

SANCHEZ, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A159016
*McLeod v. BTIG, LLC*

19