[No. B211501. Second Dist., Div. Five. Jan. 26, 2010.]

JENG-CHENG HO et al., Plaintiffs and Respondents, v.
SHIH-MING HSIEH et al., Defendants and Appellants.

**COUNSEL**

Orrick, Herrington & Sutcliffe, Matthew H. Poppe, M. Leah Somoano and Frank D. Rorie for Defendants and Appellants.

Eagan, O'Malley & Avenatti and John C. O'Malley for Plaintiffs and Respondents.

**OPINION**

**KRIEGLER, J.**—A judgment creditor brought an action under California Uniform Commercial Code section 8112 to reach shares of stock owned by the judgment debtor and his wife to satisfy a money judgment.[1] The debtor

---

[1] All further statutory references are to the California Uniform Commercial Code, unless otherwise stated.

surrendered his stock certificate to the trial court. The debtor's wife argued that shares in her name were her separate property. The trial court found that the shares had no value, yet ordered the shares transferred directly to the creditor with no reduction in the outstanding judgment. If the debtor's wife failed to transfer her shares, her shares were to be cancelled and reissued in the name of the creditor. We conclude that it was an abuse of discretion to order worthless shares of stock transferred to a judgment creditor in satisfaction of a money judgment without any reduction in the outstanding judgment. Therefore, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

*The Parties and the Judgment in the Underlying Action*

Dr. Jeng-Cheng Ho (Creditor) was raised in Taiwan. He came to the United States to attend dental school, married, and opened a dental practice in the Los Angeles area in 1986. Shih-Ming Hsieh (Debtor) met Creditor's sister Cheng-Fang Ho (Debtor's Wife) in Taiwan. They married in California in 1988, but live together in Taiwan.

In August 1991, the families purchased a 52-acre golf course property in Colton, California for $6.5 million, paying $2 million in cash and giving the seller a note for $4.5 million at 9 percent interest. Debtor and Debtor's Wife took title to the property as "husband and wife as Joint Tenants." H&H Investment Co., Inc., was incorporated on August 30, 1991. Debtor and his wife quitclaimed the Colton property to H&H. H&H issued 12,500 shares of stock each to Creditor, Creditor's wife, Debtor and Debtor's Wife. Debtor served as the president and chief executive officer of H&H. Creditor acted as the general manager of the golf course.

The golf course was not profitable because of the high interest rate on the seller's note. In 1994, Debtor told Creditor that if they provided substantial collateral, he could get a low interest loan from the French bank BNP Paribas to pay off the seller's note. Debtor obtained a $4.5 million loan from BNP with an interest rate of approximately 2 percent. The loan proceeds were paid to a Taiwanese corporation named Tonical Corporation that was controlled by Debtor. Tonical transferred the loan proceeds to Debtor's daughter-in-law Chiu-Ming Chung. Chung loaned $4.5 million to H&H at 9 percent interest. H&H continued not to show a profit because of the high interest rate on the loan. The difference between the interest rates on the BNP loan and the

Chung loan was periodically credited against the H&H shareholders' loan balances.

On February 29, 2000, the father of Creditor and Debtor's Wife died. The relationship between Creditor and Debtor's Wife deteriorated and litigation was instituted in Taiwan over the disposition of their father's assets.

On July 12, 2002, Debtor filed the complaint in the underlying action against Creditor and H&H alleging multiple causes of action, including breach of fiduciary duty, declaratory relief, an accounting, and a shareholder derivative action for breach of fiduciary duty. The issues at trial included whether Creditor had used corporate funds for unauthorized purposes and whether certain accounting adjustments were appropriate. Creditor filed a cross-complaint against Debtor for declaratory relief, breach of fiduciary duty, conversion, fraud and deceit, breach of contract, money had and received, constructive trust, an accounting and injunctive relief.

Debtor paid off the BNP loan in March 2003. The trial court issued monetary sanctions against Debtor twice for refusing to produce documents and ultimately issued evidentiary sanctions against Debtor for his continued refusal to produce documents.

Debtor's Wife attended and testified at the trial in the underlying action. The court found Creditor's expenditures on behalf of H&H were reasonable and denied recovery on the complaint. However, on the cross-complaint, the court found Debtor committed fraud and breached his fiduciary duty when he burdened the corporation with a higher interest rate than the loan available from BNP, failed to openly identify and document the loan transactions, failed to render proper accountings for Creditor's payments toward the loan balance, and required H&H to pay off the loan from Chung. The court found Creditor had paid $1,512,322.50 toward his shareholder loan balance, and therefore, Debtor owed compensatory damages of $1,512,322.50 to Creditor. In addition, the court awarded punitive damages of $6 million based on Debtor's discovery abuses, malicious conduct, and wealth. The court entered a judgment in the underlying action on January 18, 2005, awarding $8,293,534.40 to Creditor for compensatory damages, prejudgment interest, punitive damages and attorney fees. Debtor appealed from the judgment.

*The Instant Action to Enforce the Judgment*

On June 8, 2006, Creditor and H&H filed the instant action against Debtor and Debtor's Wife to transfer or cancel their H&H stock share certificates

pursuant to section 8112. The complaint alleged that Debtor is a resident of Taiwan and Debtor's Wife's primary residence is in Taiwan. Creditor had attempted to execute on the judgment by applying for a judgment debtor's examination, obtaining an assignment order, notifying Debtor to return his share certificates to H&H, and requesting that H&H transfer or cancel Debtor's shares. However, Debtor had evaded Creditor's efforts to satisfy the judgment. Creditor and H&H sought an order canceling Debtor's H&H stock certificates and reissuing them to Creditor or transferring all right, title and interest in Debtor's H&H stock certificates to Creditor. They also sought an order enjoining any action with respect to the outstanding shares.

The judgment against Debtor in the underlying action was affirmed by Division Eight of this court and Debtor filed a petition for review by the California Supreme Court, which was denied. In the instant action, Debtor and Debtor's Wife filed a demurrer on the ground that the relief sought was not authorized by section 8112, subdivision (e). They argued that section 8112, subdivision (e) permits a court to order stock certificates delivered to a levying officer for execution in accordance with California's procedures for the enforcement of judgments. Creditor and H&H argued in opposition that section 8112, subdivision (e), provides the court with broad equitable authority to fashion remedies when a judgment debtor refuses to produce a corporation's share certificates and withholds them from a levying officer's reach in a foreign country. After a hearing on December 15, 2006, the trial court overruled the demurrer. The court concluded that section 8112, subdivision (e), is a statutory exception to the writ of execution procedures for enforcement of a money judgment. The court found that section 8112, subdivision (e), provides remedies to creditors with regard to a debtor's interest in otherwise unreachable securities when the debtor refuses to produce the certificate for levy and execution.

Debtor and Debtor's Wife filed a cross-complaint in the instant action against Creditor and H&H alleging several causes of action, including involuntary dissolution of the corporation. The trial court sustained Creditor's demurrer to the cross-complaint without leave to amend after finding that the issues raised by the cross-complaint were identical to the claims litigated in the prior proceeding and the relationship between Debtor and Debtor's Wife in the underlying litigation was sufficiently close to bar her from relitigating the issues against Creditor. To reach this conclusion, the court reasoned that the shares of H&H stock owned by Debtor and Debtor's Wife were presumptively community property under California law because they were acquired

during their marriage, and therefore, any recovery by Debtor in the underlying litigation would have been community property. In addition, the court noted that H&H is a close corporation, Debtor's derivative action was brought on behalf of H&H shareholders, the same attorney represented Debtor and Debtor's Wife, and Debtor's Wife attended and testified at the underlying trial.

Creditor and H&H filed a motion for summary adjudication seeking an order under section 8112 and the court's general equitable powers directing Debtor to turn over his H&H share certificates to be levied upon under the supervision of the trial court, or if Debtor refused to surrender the share certificates in violation of the court's order, to cancel and reissue the shares in Creditor's name and apply them to satisfy the judgment under the supervision of the court. Debtor filed a notice of nonopposition to the motion for summary adjudication and deposited the original certificate issued to him for 12,500 shares of H&H stock dated July 18, 1993. Debtor's attorney declared that he could not ascertain the proper procedure for an execution sale of the shares of stock of a close corporation. The trial court concluded that there were no procedures for valuing shares under section 8112, and therefore, the parties and the court could fashion a valuation method suited to the situation. The court granted the motion for summary adjudication to the extent it sought Debtor's shares of H&H to satisfy the judgment against Debtor. The trial court also allowed Creditor and H&H to file an amended complaint adding causes of action for fraudulent transfer and unjust enrichment.

*Characterization of Wife's Interest and Trial*

On October 29, 2007, Creditor and H&H filed a motion for summary adjudication on the ground that the H&H shares in Debtor's Wife's name were community property. Debtor's Wife filed a motion for summary judgment on the ground that the shares of stock in her name were her separate property. After a hearing, the trial court granted Creditor's and H&H's motion for summary adjudication based entirely on the March 16, 2007 order sustaining the demurrer to the cross-complaint in which the court had reasoned that the Debtor's shares were community property. Although the characterization of the property was not at issue in the underlying trial between Debtor and Creditor and there was no opportunity to present evidence in connection with the demurrer proceeding in the instant action, the court stated that the characterization of the shares "was already litigated in this very Court and it was against [Debtor's Wife]. Res judicata and collateral estoppel prohibit the Court from revisiting the issue of community property."

Therefore, the court concluded no triable issue of material fact existed and Creditor was entitled to reach the shares held by Debtor's Wife.

A trial was held to determine the value of the shares. A real estate appraiser testified on behalf of Creditor and H&H that the fair market value of the golf course was $4.7 million and the liquidation value was approximately $3 million. A valuation expert opined that a 15 percent lack of marketability discount, an 18 percent minority interest discount and a 2 percent transaction cost discount should be applied as to each block of shares. H&H had been successful in a different action in voiding Chung's $7 million lien on the property, but the decision was not final. Therefore, the amount of Chung's lien must be taken into account in the valuation. Based on these factors, the valuation expert concluded that the shares had a value of zero. Alternatively, disregarding the outstanding lien and making assumptions favorable to Debtor and Debtor's Wife, the maximum value for each block of shares would be $1,056,529.

The trial court found that the value of the shares was the value of H&H's assets, less the outstanding liabilities and discounts for minority shares, lack of marketability, and transaction costs. Although the trial court found the real estate appraiser credible, the court chose to use $6.5 million as the value of the real property. The court included the Chung lien in the valuation, because the lien was still of record. The court concluded that the outstanding indebtedness to Chung eviscerated the value of H&H's assets, and therefore, the shares had no present value for purposes of an equitable judgment enforcement proceeding.

The trial court entered a judgment on August 8, 2008, authorizing Creditor and H&H to collect the shares of stock from the clerk of the court, or alternatively, to cancel and reissue the shares in Creditor's name. The judgment noted that with respect to the prior judgment in favor of Creditor in the amount of $8,293,534.40, there was no offset of any sums due and owing under that judgment as a result of the enforcement and cancellation procedures against the shares in the instant action. The H&H shares were adjudged to be of no value that would justify an offset. Debtor and Debtor's Wife filed a timely notice of appeal.

## DISCUSSION

### I.   Standard of Review

"The interpretation of a statute is a question of law, which we review de novo. [Citation.]" (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 749 [98

Cal.Rptr.3d 268] (*Jhaveri*).) We review the trial court's exercise of its equitable powers under an abuse of discretion standard of review. (*City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1256 [99 Cal.Rptr.2d 294, 5 P.3d 853].) Similarly, "[a] trial court's decision to apply a credit in partial satisfaction of the judgment is an exercise of the court's equitable discretion. [Citation.] An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason. [Citations.]" (*Jhaveri, supra,* 176 Cal.App.4th at p. 749.)

## II.   *Enforcement of a Money Judgment Against a Security Interest*

Debtor and Debtor's Wife contend it was an abuse of discretion for the trial court to transfer shares of stock having no value to Creditor without any reduction in the outstanding money judgment against Debtor. We agree.

██   The Enforcement of Judgments Law (EJL) (Code Civ. Proc., §§ 680–724.260) is a comprehensive statutory scheme for enforcing civil judgments in California (*Evans v. Paye* (1995) 32 Cal.App.4th 265, 276 [37 Cal.Rptr.2d 915]), including procedures to enforce a money judgment (Code Civ. Proc., § 695.010 et seq.). In general, all of the judgment debtor's property is subject to enforcement of a money judgment, except as otherwise provided by law. (Code Civ. Proc., § 695.010.) To levy on a security under a writ of execution to satisfy a money judgment, the EJL directs the levying officer to comply with section 8112. (Code Civ. Proc., § 700.130.) Section 8112 provides a bridge between the ways in which a security interest is held under article 8 of the California Uniform Commercial Code and the means by which a creditor pursues legal process against the debtor's property as set forth in the EJL. (See 7 A Hawkland & Rogers, Uniform Commercial Code Series (2008 Supp.) § 8-112:01, rev. art. 8 [referring to similar § 8-112 of the U. Com. Code, 1994 rev. of art. 8].)

██   Under section 8112, to reach a debtor's interest in a security represented by a certificate, the officer making the attachment or levy must actually seize the security certificate, although a security certificate in the possession of a secured party may be reached through legal process on the secured party and a security certificate that has been surrendered to the issuer may be reached through legal process upon the issuer. (§ 8112, subds. (a), (d).)[2] Subdivision (e) of section 8112 provides: "A creditor whose debtor is

---

[2] Section 8112, subdivision (a) provides: "The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy, except as otherwise provided in subdivision (d) [concerning certificates in the possession of a secured party]. However, a certificated security for which the

the owner of a certificated security, uncertificated security, or security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." (Stats. 1996, ch. 497, § 9, p. 2905.) In this case, "legal process" means "personal service by the levying officer of a copy of the writ of execution and notice of levy on the person who is to be served." (Code Civ. Proc., § 700.130.)

The comment to section 8112 states, "In dealing with certificated securities the instrument itself is the vital thing, and therefore a valid levy cannot be made unless all possibility of the certificate's wrongfully finding its way into a transferee's hands has been removed. This can be accomplished only when the certificate is in the possession of a public officer, the issuer, or an independent third party. A debtor who has been enjoined can still transfer the security in contempt of court. [(]See *Overlock v. Jerome-Portland Copper Mining Co.*, 29 Ariz. 560 [243 P. 400] (1926).[)] Therefore, although injunctive relief is provided in subsection (e) so that creditors may use this method to gain control of the certificated security, the security certificate itself must be reached to constitute a proper levy whenever the debtor has possession." (Official Comments on U. Com. Code, com. 1, Deering's Ann. Cal. U. Com. Code (2003 ed.) foll. § 8112, p. 120 [incorporating the official comments to the U. Com. Code].)

■ As explained in Hawkland & Rogers's Uniform Commercial Code Series, "Subsection 8-112(a) provides that if the debtor is the direct holder of a certificated security, the appropriate means by which a creditor can reach the debtor's interest is by actual seizure of the certificate. The principal effect of this rule would be to direct one to whatever law governs legal process for reaching ordinary chattels, rather than whatever law governs legal process for reaching choses in action. Thus, this rule is merely a reflection, in the context of the rules of creditor process, of the principle that a security certificate is an embodiment of the underlying rights against the issuer." (7A Hawkland & Rogers, Uniform Commercial Code Series (1996) § 8-112:01, rev. art. 8.)

Section 8112, subsection (e) authorizes the court to aid a creditor in reaching a certificated security or, in the case of property that cannot be reached by other legal process, in satisfying the creditor's claim by means allowed at law or in equity. "Subsection (e) simply makes clear that a creditor is entitled to appropriate aid from courts of competent jurisdiction, a proposition that would surely follow from other state law even in the subsection's

certificate has been surrendered to the issuer may be reached by a creditor by legal process upon the issuer." (Stats. 1996, ch. 497, § 9, p. 2905.)

absence. Subsection (e) provides for no relaxation of the requirements of the rest of section 8-112 (including subsection (a)'s actual seizure requirement) but merely welcomes supplemental means by which those requirements might be met." (7A Hawkland & Rogers, Uniform Commercial Code Series (2008 Supp.) § 8-112:01, rev. art. 8, fns. omitted.)

A court cannot compel a corporation to issue new stock certificates to a judgment creditor if the old certificates have not been surrendered and none of the statutory exceptions for issuing new certificates apply. (*Reynolds v. Reynolds* (1960) 54 Cal.2d 669, 679–681 [7 Cal.Rptr. 737, 355 P.2d 481]; see also *Detox Industries, Inc. v. Gullett* (Tex.Ct.App. 1989) 770 S.W.2d 954 [holding that Texas' statutory equivalent of U. Com. Code, § 8-317, the predecessor to § 8-112, did not authorize an order to cancel and reissue a stock certificate in the name of a court-appointed receiver for delivery to a levying officer to be sold at an execution sale to satisfy a money judgment]; cf. *House v. Williams* (1991) 573 So.2d 1012, 1013 [terse ruling on an emergency motion for stay of a sheriff's sale pending review that Florida's statutory equivalent of § 8112, subd. (e), "authorizes a judge to order a closely held corporation controlled by the judgment debtors to reissue stock certificates in their names when they refuse to respond to discovery or to disclose the location of the original stock certificates."].)

In this case, once Debtor lodged his H&H stock certificate with the trial court, no further aid was required from the court under section 8112, subdivision (e), to reach Debtor's interest in the security. After a certificated security is reached as required under section 8112, the enforcement procedures of the EJL apply. However, assuming the trial court could properly exercise its equity jurisdiction with regard to Debtor and Debtor's Wife's shares, we conclude that the trial court abused its discretion by ordering the property transferred directly to Creditor without any reduction in the outstanding money judgment. The purpose of Creditor's action was to reach the security interests to enforce the outstanding money judgment against Debtor. The securities at issue were found to have no value and cannot satisfy Creditor's judgment in any amount. It was an abuse of discretion to order property that cannot be applied to satisfy the outstanding money judgment in any measure transferred to Creditor in an action to enforce the judgment. (Cf. *Associated Ready Mix, Inc. v. Douglas* (Tex.Ct.App. 1992) 843 S.W.2d 758, 761–763 [abuse of discretion to order judgment debtor to turn over derivative cause of action to judgment creditor who would not pursue claims, because the value of the claims could not be determined and applied to satisfy the judgment].) The judgment ordering the certificates transferred directly to Creditor must be reversed.

## DISPOSITION

The judgment is reversed. Appellants Shih-Ming Hsieh and Cheng-Fang Ho are awarded their costs on appeal.

Armstrong, Acting P. J., and Mosk, J., concurred.