Filed 2/16/23; Certified for Publication 3/20/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of LAURALIN ANDERSON COHEN and RICHARD COHEN. | |
| LAURALIN ANDERSON COHEN, Respondent, v. RICHARD COHEN, Appellant. | G060697 (Super. Ct. No. 06D009414) O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Donald F. Gaffney, Judge.  Affirmed in part and reversed in part.

John R. Schilling for Appellant.

Law Offices of Marjorie G. Fuller and Majorie G. Fuller for Respondent.

After Richard Cohen (Richard) filed a request to modify his child support and spousal support obligations, Lauralin Anderson Cohen (Lauralin) moved to dismiss Richard's motion under the disentitlement doctrine as Richard was delinquent on his support obligations. The trial court granted Lauralin's motion and on its own, conditioned the filing of any future modification requests on Richard being current on his support obligations. As discussed below, we conclude the court did not abuse its discretion in granting Lauralin's motion to dismiss, but erred in conditioning the filing of future modification requests on Richard being current on his support obligations. Accordingly, we affirm in part, and reverse in part.

I

FACTUAL AND PROCEDURAL BACKGROUND

Richard and Lauralin were married in 1990 and separated in 2006. They have four children, all of whom suffer from significant disabilities. In 2011, they entered into a stipulated judgment of dissolution of marriage, which provided that Richard would pay $15,000 monthly in spousal support and $13,200 in child support. In 2014, Richard filed a request for order (RFO) seeking, among other things, a reduction in his child support obligations and termination of spousal support. The trial court declined the request, and this court affirmed. (*In re Marriage of Cohen* (2016) 3 Cal.App.5th 1014.)

In November 2018, the parties entered into a stipulation to resolve certain spousal and child support issues, including Richard being in arrears on his support obligations. The parties agreed Richard would pay Lauralin $524,400 to satisfy all arrearages. They further agreed that Richard's future child support obligations would be reduced to $10,500 monthly. Finally, the parties agreed a trial would be held before Commissioner Richard G. Vogl, retired, sitting on assignment as a private judge on Richard's request to modify future spousal support.

2

At the February 11, 2019 hearing, Commissioner Vogl issued a tentative decision reducing spousal support to $10,125 per month. Before Commissioner Vogl issued his final ruling on March 4, 2019, Richard filed an RFO to modify his support obligations under the November 2018 stipulation, based on the ground his income would be greatly reduced because of job loss. He requested spousal support be terminated, and child support reduced to guideline. In a supporting declaration, Richard stated that while he had $66,646 in monthly income available for support in November 2018, his employment would be terminated on March 15, 2019, leaving him with only $18,000 in monthly income.

Lauralin filed a motion to dismiss Richard's RFO. She argued it should be dismissed under the disentitlement doctrine because Richard had not paid any spousal support since October 1, 2018, was late in paying his February 2019 child support, and did not pay the March or April 2019 child support. Richard opposed the motion to dismiss based on his inability to pay. He asserted he had to borrow $500,000 to pay his arrearages, and he paid child support until March 2019 when he lost his job.

On April 3, 2019, Commissioner Vogl issued his Final Statement of Decision reducing Richard's spousal support to $8,311 per month and confirming child support would be $10,500 monthly. He determined spousal arrearages as of February 15, 2019, were $38,801, for the period of October 1, 2018 through February 1, 2019. On May 30, 2019, Commissioner Vogl ruled on Lauralin's motion to dismiss as follows: "Without prejudice, this court declines to dismiss . . . based upon the Disentitlement Doctrine." He granted the parties' request to release the case back to the public court system. Commissioner Vogl did not rule on the March 4, 2019 RFO. The RFO was set for a hearing in superior court on February 5, 2021.

In late April 2019, Richard filed an income and expense form (INE) stating, under penalty of perjury, that he began working for DJD & S Corporation March 1, 2019, with a monthly gross income of $20,500. His average monthly income for the past 12

3

months, however, was $66,546. His estimated monthly expenses were $35,600. In March 2020, in a New York legal matter involving the parties, Richard filed a sworn statement claiming his income was "approximately $300,000 annually." Three months later, in June 2020, his lawyer sent a letter stating that Richard's monthly income was $16,665, or approximately $200,000 annually. In October 2020, Richard filed an INE, indicating he continued to work for DJD & S, but his gross monthly income had decreased to $15,000, and his estimated monthly expenses had increased to $40,350.

On January 13, 2021, Lauralin again moved to dismiss the RFO under the disentitlement doctrine. In a supporting declaration, Lauralin set forth the case history. She noted that, although Commissioner Vogl ordered Richard to pay spousal arrears of $38,801 in April 2019, he failed to do so. On October 3, 2019, Lauralin filed an Order to Show Cause (OSC) and an Affidavit for Contempt against Richard for his failure to pay the spousal support arrearages. The matter was continued until October 23, 2020, and immediately prior to the hearing, Richard paid the spousal support arrearages. Lauralin also stated that Richard had not made any spousal support payments under the new support order since March 1, 2019. As to child support, Richard only made three monthly payments (for February, March and April 2019), and Lauralin was able to recover $2,332.69 through a wage garnishment or bank levy in September 2019, and an additional $7,011.42 in February 2020 through a wage garnishment or bank levy.

After the matter was continued several times, on May 3, 2021, Richard filed his objection to the January 13, 2021, motion to dismiss. He argued that willful disobedience of the support obligations is a prerequisite to application of the disentitlement doctrine. In his declaration, Richard asserted his non-payment of support obligations was "not caused by willful disobedience but simply my inability to comply due to my lack of income."

At the May 14, 2021 hearing on Lauralin's motion to dismiss, the trial court asked Lauralin's counsel whether the motion to dismiss was based on the "unclean hands

4

doctrine," and counsel agreed. The court then provided its tentative ruling—granting the motion to dismiss without prejudice to Richard filing a future RFO that would be retroactive to the date of the new RFO—before hearing oral arguments on the motion. In response to the tentative ruling, Richard's counsel argued it would be a "complete injustice to [his] client" because Richard had lost his job in March 2019. Counsel requested an evidentiary hearing to present evidence that Richard's monthly income over the past two years had been $10,000 or less, and that he has no assets to pay the support obligations. The court confirmed with Richard's counsel that Richard had filed two INE's in the matter. On April 24, 2019, Richard indicated his average monthly income was $66,546. "That's after Commissioner Vogl's order was made. The next INE filed by [Richard] is filed on October the 20th of 2020, a year and a half later, showing $15,000 per month. There is no INE filed by [Richard] in between those two."

After additional arguments by both parties, Richard's counsel reiterated his request for a full evidentiary hearing. The court then issued its final ruling. It rejected the request for a full evidentiary hearing because the request "is essentially, from this court's perspective, a request that I hear the RFO to modify support." The court indicated that the "record itself contains sufficient information from which the court can rule on the motion to dismiss."

The trial court stated its reasons for granting Lauralin's motion to dismiss as follows:

"Commissioner Vogl's ruling was made on April the 3rd of 2019. It was the OSC re: contempt that finally prompted the respondent to pay arrearages that were ordered by Commissioner Vogl back on April the 3rd of 2019. That OSC re: contempt was, I believe, filed in October of 2019. Short of that, he wouldn't have paid it. It's just plainly obvious he wouldn't have. It's also plainly obvious he has the ability to pay it. Because once he was facing the OSC re: contempt, he came up with the money.

5

"The court is looking at his filed income and expense declaration[s] after the order from Commissioner Vogl was made. He filed an income and expense declaration later in that same month showing income of $66,000 a month. The next income and expense declaration that he filed . . . October 20th of 2020 showing $15,000 a month. And whatever happened in between, there's no income and expense declaration showing that he couldn't afford to pay it. Certainly as of the end of the month in April of 2019, he could have been making payments towards the court's orders and he chose not to. Even with regards to the INE filed in October of 2020 there was income that he was receiving. That he chose to pay other things is not an explanation that's acceptable with regards to an unclean hands doctrine."

On July 3, 2021, the trial court entered its order dismissing, without prejudice, the March 4, 2019 RFO "with leave . . . to file a future [RFO] for modification of the support orders with retroactive effect preserved only back to the date of such future filing and provided that, at the time of such future filing, [Richard] is current in the payment of his child and spousal support obligations."

II

DISCUSSION

*A. This Court Declines to Dismiss the Appeal Under the Disentitlement Doctrine*

At the outset, Lauralin argues this appeal should be dismissed under the disentitlement doctrine because of Richard's repeated failures to comply with his court-ordered support obligations. "An appellate court has the inherent power, under the 'disentitlement doctrine,' to dismiss an appeal by a party that refuses to comply with a lower court order." (*Stoltenberg v. Ampton Investments, Inc*. (2013) 215 Cal.App.4th 1225, 1229 (*Stoltenberg*).) As our Supreme Court has said, "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state."

(*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) "'Appellate disentitlement "is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction . . . ." [Citation.]' [Citation.] No formal judgment of contempt is required; an appellate court 'may dismiss an appeal where there has been *willful disobedience or obstructive tactics*. [Citation.]' [Citation, italics added.] The doctrine 'is based upon fundamental equity and is not to be frustrated by technicalities.'" (*Stoltenberg*, *supra*, 215 Cal.App.4th at p. 1230.) The "disentitlement doctrine 'is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed.'" (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.) "[T]he merits of the appeal are irrelevant to the application of the doctrine." (*Ibid*.) Finally, "[c]ourts do not lightly apply the disentitlement doctrine." (*Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 756 (*Findleton*).) It should "be applied in a manner that takes into account the equities of the individual case." (*People v. Puluc-Sique* (2010) 182 Cal.App.4th 894, 901.)

Here, Richard is appealing from an order granting Lauralin's motion to dismiss his RFO under the disentitlement doctrine and conditioning any future RFO on his being current with support obligations. There is no evidence that while this appeal has been pending, Richard has disobeyed the challenged order by filing RFO's without being current on his obligations. As for his repeated failures to comply with court-ordered obligations, we note this is the first time Richard has been denied his right to judicial assistance based on those acts. We find his failure insufficient to deprive Richard of his right to seek judicial review for the first time of the trial court's dismissal order based on disentitlement. Thus, we decline to dismiss the appeal under the disentitlement doctrine.

*B. The Trial Court Did Not Err Dismissing March 4, 2019 RFO*

Turning to the appeal, Richard argues that under res judicata principles the trial court erred in hearing Lauralin's second motion to dismiss because Commissioner Vogl had already heard her first motion to dismiss and denied it. He further argues the court's couching its ruling based on the unclean hands doctrine rather than the disentitlement doctrine does not save the second motion because the rationale underlying two doctrines is the same: "one who seeks equity must do equity." (*Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 757, fn. 5.) We disagree that the court could not hear a second motion to dismiss. Commissioner Vogl declined to grant the first motion to dismiss "without prejudice." "The term 'without prejudice,' in its general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought." (*Chambreau v. Coughlan* (1968) 263 Cal.App.2d 712, 718.) Thus, Commissioner Vogl's ruling did not bar Lauralin from bringing a second motion to dismiss on the same theory, and the court from hearing and granting the motion under the disentitlement doctrine.

Richard next argues the trial court erred in denying his request for a full evidentiary hearing to present evidence that his nonpayment of support obligations was based on inability to pay. He notes that Family Code section 217 requires the court receive "any live, competent testimony that is relevant and within the scope of the hearing," subject to a finding of good cause to refuse based on reasons stated in the record. Reasons for refusing live testimony include whether material facts are in controversy and whether live testimony is necessary for the court to assess credibility. (Cal. Rules of Court, rule 5.113(b)(2)-(3).) The court was not required to set forth its conclusion as to each of the factors listed in rule 5.113(b); it was "required to state only those facts upon which the finding of good cause was based." (Cal. Rules of Court, rule 5.113(c).)

8

At the outset, we note that the right to live testimony under Family Code section 217 may be forfeited. (*In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1127.) The record arguably shows Richard forfeited his right to live testimony. In his written opposition, Richard did not request the right to testify or cross-examine Lauralin. The record does not indicate a witness list was submitted. At the hearing, counsel neither referenced Family Code section 217 nor requested that Richard be allowed to testify. Rather, counsel made a general request to present evidence about Richard's inability to pay.

Assuming that counsel's request for a full evidentiary hearing properly invoked his right to live testimony, we find the trial court made a sufficient finding of good cause to refuse live testimony. As set forth above, the court determined that there was sufficient evidence in the record for it to rule on the motion to dismiss. "Implicit in the court's words is a determination that the material facts were not in controversy (rule 5.113(b)(2)), and that live testimony was not necessary for the court to assess the parties' credibility (rule 5.113(b)(3))." (*In re Marriage of Binette*, *supra*, 24 Cal.App.5th at p. 1132.) The court thus satisfied its obligations under Family Code section 217 and California Rules of Court, rule 5.113.

In any event, any error in refusing live testimony was harmless. The trial court's ruling was based on Lauralin's declaration, Richard's INE's and reasonable inferences drawn from those filings. As set forth above, the court concluded that the court filings show Richard could have, even partially, paid his support obligations but intentionally failed to do so until he faced contempt charges or sought the court's assistance. It is not reasonably probable that live testimony from Richard about his inability to pay would undermine the court's conclusions based on the declaration and documentary evidence. (*In re Marriage of George & Deamon* (2019) 35 Cal.App.5th 476, 484 [finding any error in complying with Family Code section 217 harmless where live testimony would not affect any of the issues on which the court based its ruling].)

9

In his appellate reply brief, Richard argues for the first time that the trial court improperly relied on Lauralin's declaration and his INE's because those documents were never expressly admitted. "We will not ordinarily consider issues raised for the first time in a reply brief. [Citation.]" (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275.) Even were we to consider this argument, we would find it forfeited because Richard failed to object below. As set forth above, the court stated that its ruling on the motion to dismiss was based on statements in Lauralin's declaration and Richard's INE's. Although Richard's counsel argued about the interpretation of the income statements in the INE's and sought to explain Richard's nonpayment, he never objected to the admission of the declaration and INE's. Accordingly, because he failed to make evidentiary objections below, he waived his right to raise evidentiary objections to those documents on appeal.

We reject Richard's general claim that the trial court's ruling was erroneous because there was insufficient evidence to show he willfully disobeyed the court orders on support. We review the court's application of the disentitlement doctrine for an abuse of discretion. (*Ho v. Hsieh* (2010) 181 Cal.App.4th 337, 345.) "'An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason. [Citations.]' [Citation.]" (*Ibid.*)

As discussed, the case history shows Richard had substantial arrearages which he paid to receive a trial before Commissioner Vogl. As set forth in Lauralin's declaration, after Commissioner Vogl ordered lower support payments, Richard was immediately delinquent and did not pay the obligations in full until immediately before a contempt hearing. While Richard disputes how the income statements in the INE's should be interpreted, the INE's show Richard had income to make at least partial payments on his support obligations. In sum, the evidence supports an inference that Richard intentionally did not comply with his support obligations unless forced to do so by contempt hearings or when he sought judicial aid and assistance to reduce the support

10

obligations.  The court did not abuse its discretion in reaching that conclusion and dismissing the RFO under the disentitlement doctrine.

### C. The Trial Court Abused Its Discretion in Conditioning All Future RFO's to Modify Support on Richard Being Current With His Obligations

Finally, we turn to the trial court's order conditioning the filing of future RFO's to modify support obligations on Richard being current with his obligations.  We conclude the court abused its discretion in setting this condition.  We are unable to locate – and Lauralin does not cite – any case supporting conditioning future RFO's on payments of support obligations.  Lauralin's reliance on *In re Marriage of Fink* (1979) 25 Cal.3d 877, is misplaced because that case involved the conditioning of a new trial on payment of attorney fees.  However, the power of a court "to impose terms as a condition of making an order for a new trial is too well settled to need argument in its support." (*Brooks v. San Francisco & N.P. Ry. Co.* (1895) 110 Cal. 173, 174.)  There is no such similar precedent for RFO's to modify support obligations.

The disentitlement doctrine does not support the trial court's order.  As noted, the disentitlement doctrine should not be applied lightly, but must be based on the equities of the individual case. (*Findleton*, *supra*, 69 Cal.App.5th at pp. 756-757.)  A blanket dismissal of an RFO before considering any changes in circumstances, such as substantial compliance with support obligations, would be inequitable, even with the record showing a history of Richard being in arrears.  Stated differently, a court may, after considering the equities, dismiss future RFO's on the basis that Richard is not current with his obligations.  But such dismissal must be on an individual motion-by-motion basis.  Accordingly, the court erred in conditioning the filing of future RFO's on Richard being current with his support obligations.

11

III

DISPOSITION

The postjudgment order dismissing the March 4, 2019 RFO is affirmed, but the conditioning of future RFO's on Richard being current with support obligations is reversed. The parties are to bear their own costs on appeal.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

Filed 3/20/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of LAURALIN ANDERSON COHEN and RICHARD COHEN. | |
| LAURALIN ANDERSON COHEN, Respondent, v. RICHARD COHEN, Appellant. | G060697 (Super. Ct. No. 06D009414) O R D E R |

 

As the nonpublished opinion filed on February 16, 2023, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), the request for publication filed on March 8, 2023, is hereby granted and it is ordered that the opinion be certified for publication in the Official Reports.

DELANEY, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

1