Filed 6/30/25  Steinberg v. Waraftig CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHELLE STEINBERG, | B331978 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STFL11142) |
| v. | |
| ERIC WARAFTIG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Bradley S. Phillips, Judge.  Affirmed.

Eric Waraftig, self-represented litigant, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# I.  INTRODUCTION

Defendant Eric Waraftig appeals from the trial court's order granting plaintiff Michelle Steinberg's petition for a domestic violence protective order under Family Code section 6203.[1]  We affirm.

# II.  BACKGROUND

On October 12, 2022, plaintiff filed a petition for dissolution of her marriage to defendant.  On October 18, 2022, she filed a request for a domestic violence restraining order (DVRO).  She also requested an order granting her sole possession and control of the family's residence, stating that the house was "under [her] name alone and prior to filing [her] request for dissolution, [she] entered a real estate agreement to list the house for sale.  [Defendant] was aware that [she] signed a real estate agreement when [she] signed it."[2]

In support of her request for orders, plaintiff filed a declaration stating, among other things, that defendant had physically restrained her in the house, had repeatedly pushed her in the past, had made threats such as "'you're going to pay,'" and had stalked plaintiff such that plaintiff had to disable the

---

[1]  All further statutory references are to the Family Code unless otherwise indicated.

[2]  Plaintiff also filed a request for child custody and visitation orders granting her sole physical and legal custody of the two children, ages 10 and 8, with no visitation for defendant.  On April 5, 2023, the parties entered into a stipulation regarding visitation.

location settings on her phone. Plaintiff also declared that she was terrified of defendant.

In the same declaration, plaintiff explained that she could not afford to continue to pay the mortgage on the home while still supporting the children, that defendant and his father also lived in the home, and that although defendant was aware that plaintiff intended to sell the home, "on October 14, 2022[, defendant] threatened [her] real estate agent with litigation. He is interfering with the sale seemingly as a way to 'make me pay' for wanting to divorce him."

On April 19, 2023, and May 31, 2023, the trial court held an evidentiary hearing on plaintiff's request for a DVRO.[3] Plaintiff testified, among other things, that defendant often called her names, including a "[f]uckup," a "bitch," "worthless," and a "horrible mom."

In May 2022, defendant yelled at plaintiff and then pushed her. Plaintiff had been placing a knife in the sink and defendant falsely told the children that plaintiff was trying to use the knife to hurt him.

Plaintiff also testified that on July 15, 2022, while standing in front of a child's bedroom with the child inside, defendant yelled obscenities at plaintiff and then pushed her with enough

---

[3] On November 9, 2022, defendant filed a petition for a DVRO. In the court's June 1, 2023, minute order, the court indicated that defendant had voluntarily withdrawn his request.

3

force to cause plaintiff to fall to the ground.[4]  Defendant then used his elbows to prevent plaintiff from getting back up.

Following plaintiff's filing for a dissolution of marriage, defendant told plaintiff he would make sure that she paid for breaking up the family, he would "ruin" her, and he would do whatever he could to make sure she did not divorce him. Defendant then followed plaintiff around the house, blocked her access to certain rooms, and refused plaintiff's requests to stay out of her room (defendant stayed in the primary bedroom and plaintiff moved into a small room at the back of the house).

Defendant also made statements to plaintiff that caused her to believe he was tracking her movements through her cell phone.  For instance, he told her that she was spending too much time at the gym, even though plaintiff had not told him she was going to the gym.  Plaintiff therefore turned off the "Find my Friends" function on her cell phone.  But when she later checked her phone, she discovered that it had been turned back on.

On October 17, 2022, after she used the shower in the primary bedroom and was in the process of returning to her own room, plaintiff was physically restrained by defendant who used his hands and body to keep her from exiting the room.  Plaintiff was scared and screamed at defendant to let her out of the room. She eventually left the bedroom and returned to her own room. She then asked her lawyer to file a request for a DVRO.

Defendant also testified at the hearing.  Among other things, he admitted to yelling at plaintiff in the presence of the children.  He also admitted to violating a temporary restraining

---

[4]     According to plaintiff, she was five-feet two-inches tall and weighed 100 pounds, and defendant was five-feet ten-inches tall and weighed between 180 and 190 pounds.

4

order (TRO) by sending plaintiff an e-mail. Regarding the May 2022 incident, defendant denied striking plaintiff and instead claimed that he grabbed plaintiff's arms to prevent her from striking him. He also denied pushing plaintiff in July 2022. He admitted that he may have followed plaintiff around the house after she told him that she did not want to discuss the divorce with him, but stated that he did so only "for a couple seconds and then gave up, as usual."

Following closing arguments, the trial court took the matter under submission.

On June 1, 2023, the trial court issued a minute order on the submitted matter which stated, in pertinent part: "With respect to [plaintiff's] request for a restraining order against [defendant], the [c]ourt has considered the evidence and arguments filed by the parties and those presented at the hearing, and rules as follows: [¶] The [c]ourt finds that [plaintiff] has satisfied her burden of showing by a preponderance of the evidence that [defendant] committed abuse against her within the meaning of . . . section 6203, as detailed in her request and her testimony at the hearing. The [c]ourt finds that [plaintiff] is a credible witness and that [defendant] is not. The [c]ourt further finds that a restraining order is necessary in order to protect [plaintiff] and the parties' minor children . . . and to prevent the re-occurrence of abusive conduct. The [c]ourt has considered the totality of the circumstances in determining whether to grant relief or not. [¶] The [c]ourt therefore grants a three-year restraining order after hearing, which is filed simultaneously with this order. Incorporated into (and appended to) that restraining order is the Stipulation and Order re Visitation filed on April 5, 2023."

5

On July 28, 2023, defendant filed a notice of appeal from the June 1, 2023, order.

## III. DISCUSSION

### A. *Legal Principles*

Under the Domestic Violence Prevention Act (§ 6200 et seq.; the Act), a trial court may issue a restraining order to prevent acts of domestic violence and "to provide for a separation of the persons involved" upon "reasonable proof of a past act or acts of abuse." (§§ 6220, 6300.) Abuse includes intentionally or recklessly causing or attempting to cause bodily injury. (§ 6203, subd. (a)(1).) But "[a]buse is not limited to the actual infliction of physical injury or assault" and includes causing or attempting to cause bodily injury, sexual assault, placing a person "in reasonable apprehension of imminent serious bodily injury," and behavior such as "stalking, threatening, . . . harassing, . . . or disturbing the peace of the other party . . . ." (§§ 6203, 6320, subd. (a).) "The [Act] requires a showing of past abuse by a preponderance of the evidence." (*In re Marriage of Everard* (2020) 47 Cal.App.5th 109, 122.)

We review the grant or denial of a request for a DVRO for abuse of discretion. (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1426–1427, fn. omitted.) "[T]o the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review." (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 (*Curcio*).)

6

B.     *Analysis*

1.     Legal Errors

Under the subheading, "The Trial Court Erred [as] a Matter of Law" (capitalization omitted) defendant raises several complaints about the trial court's ruling on the DVRO.  First, he asserts that the legal standard governing the disposition of plaintiff's request for a DVRO was "the totality of the circumstances" and that the trial court failed to apply that standard.  (See § 6301, subd. (d) ["The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief"].)  But the portion of the record defendant cites does not support his assertion.  During a colloquy with counsel at the May 31, 2023, hearing, the court did indicate that the totality of the circumstances was not the applicable standard, but later confirmed that it would review the authorities defendant provided in prior filings before making its final decision.  And, the court's subsequent written decision stated, "The [c]ourt has considered the totality of the circumstances in determining whether to grant relief or not."

Defendant next suggests that there was evidence in the record that "demonstrates the court did not review the totality of the evidence prior to the hearing."  But, by pointing to evidence in the record that arguably supports a different result, defendant's contention is, at bottom, a challenge to the trial court's credibility findings and weighing of evidence.  It is therefore meritless as "[w]e do not determine credibility or reweigh the evidence" in reviewing the record for substantial evidence.  (*Curcio, supra*, 47 Cal.App.5th at p. 12.)

7

Defendant also raises the "disentitlement" doctrine, arguing that the trial court committed legal error by not considering his allegations and testimony showing that plaintiff had violated the TRO issued against her and deciding whether those violations operated as a bar to the relief she sought.[5]  We review a court's use of its equitable powers under the disentitlement doctrine for an abuse of discretion.  (*In re Marriage of Cohen* (2023) 89 Cal.App.5th 574, 583; *Ho v. Hsieh* (2010) 181 Cal.App.4th 337, 345.)  But, to the extent we are called upon to review the factual findings underlying such an exercise of discretion, such as for example whether plaintiff violated the TRO, we apply the substantial evidence standard.  (*Curcio, supra*, 47 Cal.App.5th at p. 12.)  As we explain below, the facts underlying the court's issuance of a protective order are well supported by substantial evidence.  We therefore find no abuse of discretion.

### 2.  Sufficiency of the Evidence

Defendant contends that the "trial court's decision must be reversed because there is no reasonable factual basis for the decision.  Here, [plaintiff] presented no reasonable proof of past acts of 'abuse,' as that term is defined by statute."

Plaintiff testified that defendant became angry, yelled obscenities at her, and then pushed her on two occasions.  On the second occasion, defendant who outweighed plaintiff by at least 80 pounds, shoved her with enough force to cause her to fall to

---

[5]  Defendant referenced the disentitlement doctrine in his January 9, 2023, motion for reconsideration of the trial court's December 21, 2022, order allowing plaintiff to sell the home.

8

the ground and he prevented her from getting up.  He also refused her requests that he leave her room, blocked her exit from the primary bedroom, and, without permission, followed her movements through her cell phone.  Further, defendant admitted to making physical contact with plaintiff during an argument, contending it was self-defense, and that he followed plaintiff around the house.

The trial court expressly credited plaintiff's testimony and did not credit defendant's denials of abuse.  On this record, we find substantial evidence supports the trial court's express finding of past abuse as that term is defined under the statute.  (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 ["The testimony of one witness, even that of a party, may constitute substantial evidence"]; *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043 ["A trier of fact is free to disbelieve a witness . . . if there is any rational ground for doing so"].)

### 3.    Abuse of Discretion

Defendant additionally contends that the "evidence presented regarding [his] conduct demonstrates that, even if truthfully described, it does not meet the statutory definition of 'abuse' in [sections] 6203 or 6320."  We disagree.

As explained, plaintiff testified that defendant became angry and pushed her on at least two occasions and, on the second occasion, the much larger defendant shoved plaintiff so hard she fell to the ground where he then held her down.  Such conduct supported an inference that he recklessly attempted to inflict bodily injury and therefore constituted an act of domestic violence.  (§ 6203, subd. (a)(1), (3)) ["abuse" includes

9

"intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury" and "plac[ing] a person in reasonable apprehension of imminent serious bodily injury . . .".) Plaintiff also testified that defendant prevented her from leaving the primary bedroom and followed her movements around the house and through unauthorized use of her cell phone. Such conduct constitutes abuse. (§§ 6203, subd. (a)(4), 6320, subd. (c)(3) [abuse includes controlling and monitoring movement]; see also *McCord v. Smith* (2020) 51 Cal.App.5th 358, 366 ["Whether one single act by [the defendant] would have been sufficient to justify the issuance of the DVRO is not the question—the trial court considers whether the totality of the circumstances supports the issuance of the DVRO. (. . . § 6301, subd. (c).)"].)

### 4. Best Interests of the Children

Citing to a statement made by the trial court at the end of the May 31, 2023, hearing, defendant argues that the court erred by refusing to consider the best interests of the parties' two children in issuing a DVRO that included the children as protected parties. According to defendant "when [he] reminded the [c]ourt of its duty to consider the[] [b]est interests of the children, the [c]ourt stated that it was not the accurate standard."

At the end of the May 31, 2023, hearing, defendant argued that the matter did not just involve whether to issue a DVRO, it also included a marital dissolution petition. In that context, defendant referenced the best interests of the children. The trial court reminded defendant that "the issue in this case is [limited to] whether a restraining order should be issued" and then stated

that "[t]he standard on that is not the best interests of the children."

But earlier in the hearing, in response to defendant's complaint that plaintiff had custody of the children, the court stated, "Let me just make sure the record is clear. You remain free at any time to file a request for [an] order modifying custody and visitation in the case, whether the court issues a restraining order or the court does not issue a restraining order. So I just want to make sure that you understand that." Defendant indicated that he understood.

The exchange was apparently in reference to the parties' earlier stipulation regarding visitation which effectively removed that issue from those remaining to be adjudicated at the hearing. It suggested an understanding between the trial court and counsel that any issue involving the children's legal and physical custody, including what would serve their best interests under the circumstances of their parents' current relationship, would be addressed separately. Thus, when read in context, the court's comment did not indicate that it was refusing to consider the best interests of the children. Instead, the comment was an attempt by the court to focus defendant's argument on the specific issue under discussion at that point, namely, whether defendant had committed acts of abuse, as defined by the Act, sufficient to support the issuance of a DVRO. On this record, defendant has failed to demonstrate the error of which he complains.

5.      Due Process

Defendant next contends that the trial court violated his due process rights when on December 21, 2022, it authorized

11

plaintiff to move forward with her planned sale of the residence. Defendant's notice of appeal lists only the court's June 1, 2023, DVRO as the order being challenged on appeal. "'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.'" (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) We therefore do not consider the merits of defendant's challenge to the court's December 21, 2022, order in this appeal.

6.      Attorney Misconduct

Defendant's final contention is that the trial court erred by allowing plaintiff's attorney to make repeated references to the fact that he was a dangerous convicted felon. Defendant's contention is not supported by the record.

Although plaintiff's counsel did make repeated references to the fact that defendant was a convicted felon, the trial court made clear at the November 10, 2022, hearing that it had no evidence before it of the fact of such a conviction and that it would not consider any conviction in ruling on the DVRO request. In response to the Evidence Code section 352 objection by defendant's counsel to counsel's convicted-felon reference, the court ruled: "I'm not considering the conviction. I don't know anything about the conviction and I'm not considering the conviction in my consideration of these [DVRO] requests."

Defendant does not show how he was prejudiced by counsel's statements in light of the trial court's ruling. Although he concludes that the statements had a negative impact on the court's ultimate credibility determinations, he does not point to anything in our record that suggests the court was influenced in

12

such a manner by the comments.  Absent such an affirmative showing, we presume the court ignored all matters that it knew were irrelevant or otherwise inadmissible.  (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.)

## IV.    DISPOSITION

The DVRO is affirmed.  No costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

BAKER, J.